UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

RAYMOND C. NOVAK and ROSEMARIE )
NOVAK, )
      Plaintiffs, )
       )
  vs. ) 1:10-cv- 0677-RLY-DML
       )
INDIANA FAMILY AND SOCIAL )
SERVICES ADMINISTRATION, ANNE )
MURPHY in her official capacity as )
Secretary of FSSA, and INTERNATIONAL )
BUSINESS MACHINES CORPORATION, )
      Defendants. )
       )

**ENTRY ADDRESSING DEFENDANTS' MOTIONS TO DISMISS**

This matter is before the court on two separate motions to dismiss, one filed on behalf of Defendant International Business Machines Corporation ("IBM") and the second on behalf of the "state government Defendants", Indiana Family and Social Services Administration ("FSSA") and the FSSA Secretary, Anne Murphy. IBM moves for dismissal of Plaintiffs' claims pursuant to Fed.R.Civ.P. 12(b)(6), while the state government Defendants invoke both subsection (b)(1) and (b)(6) of Rule 12 in arguing for dismissal of the Plaintiffs' Section 1983 claims for injunctive relief and damages against them.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the complaint must first comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," such that the defendant is given fair notice of the nature of the claim and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47(1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. Surviving a Rule 12(b)(1) motion to dismiss is more difficult, as Plaintiff bears the burden of proving that the jurisdictional requirements have been met. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003).

## FACTUAL ALLEGATIONS

In December 2006, the State of Indiana entered into a contract with IBM for the purpose of modernizing the manner in which the FSSA processed Medicaid claims and applications. As a part of that effort, caseworkers previously employed by the state to interview and counsel applicants transferred their employment to IBM or one of its subcontractors (collectively referred to as the "IBM coalition"). The IBM coalition took over responsibility for most of the work previously performed by the State, up to the point of the actual benefits determination decision. The actual benefit determinations remained the responsibility of the State, but those benefit determinations were premised upon the IBM coalition's "work-up" of the Medicaid applications.

The $1.3 billion dollar contract for modernization was to run for ten years, but the effort to modernize resulted in significant delays and other problems which left the Medicaid benefits procurement process in Indiana with a backlog of unprocessed or incorrectly processed Medicaid applications. Consequently, the State cancelled its contract with IBM at the start of 2009 and the two parties are in the midst of litigating the consequences of that cancellation.

Applicants whose claims were lost, delayed or arbitrarily denied became part of the aftermath of the problem plagued modernization effort. Plaintiffs Raymond and Rosemarie Novak of Anderson, Indiana are husband and wife and they claim to be

members of that unfortunate group of applicants whose claims were adversely affected in one way or another by the contractual modernization effort which was ultimately abandoned.

On October 20, 2008, an Indiana online application for Medicaid benefits was submitted on behalf of Raymond Novak by the law firm which Raymond's son, and court appointed guardian, retained for that purpose. In addition to the online application, a copy of a court order, issued by the Superior Court of Madison County, Indiana was telefaxed with a paper copy of the Medicaid application and numerous pages of the couple's financial records to the Marion Service Center, which was the regional FSSA office responsible for servicing applications from individuals living in Anderson, Indiana.

The importance of the court order was that it had been entered the previous year, subsequent to Mr. Novak being admitted to a nursing facility, and it authorized his legal guardian to allocate all but $1,000 of his and his wife's assets for the care and support of his wife, who remained at home. The distribution of income, property and other marital assets between husband and wife has a significant impact on either's eligibility for Medicaid benefits should they be institutionalized. In order to comply with federal statutes, the FSSA was required to compute the amount of assets reserved to the noninstitutionalized or "community spouse" (an amount known as the "community spouse resource allowance"), which is not considered for purposes of determining the financial resources of the institutionalized spouse. The Medicaid statutes allow for four

alternative computation methods and require that the one which results in the largest figure be utilized. One of the alternative modes of calculating the community spouse resource allowance is simply to base it upon the amount of resources transferred for support of the community spouse by way of court order against the institutionalized spouse. 42 U.S.C. § 1396r-5(f)(2)(A).

During the pertinent time period, the IBM coalition operated the Marion Service Center and was responsible for the initial processing of all applications. After inquiring about Mr. Novak's application and learning that the service center had no record of it, the law firm retained to pursue the claim for Mr. Novak again telefaxed the application and supporting materials to the service center on November 14, 2008. This prompted an initial benefits interview conducted by a member of the IBM coalition, which ultimately led to an eligibility determination. On January 30, 2009, FSSA denied Medicaid eligibility to Raymond Novak on the basis that the "value of resources exceeds limit of $23,412 by $107,484.50." No mention of the court order was made in the eligibility determination and no explanation of why a more restrictive method of computing the applicable community spouse resource allowance was utilized when the agency or its contractors were required to utilize the computation method which provided the result most favorable to the applicant.

A timely appeal of the determination was made on February 4, 2009, via telefax to the Marion Service Center, as provided for by the FSSA denial notice. Inquiries

regarding the status of the appeal made to representatives of the IBM coalition resulted in the law firm learning on June 4, 2009 that the appeal had not been processed and no hearing date set. Like it had done with the initial application, the law firm copied and re-faxed the appeal documents; however, this time they decided to send it directly to FSSA's appeals division in Indianapolis. An Administrative Law Judge ("ALJ") was appointed and a telephonic hearing was conducted on September 3, 2009. On February 25, 2010, the ALJ issued her decision sustaining the denial of Medicaid benefits on the basis that the resources ordered transferred by the Superior Court of Madison County had not been timely transferred to the community spouse and, hence, Mr. Novak's available resources were in excess of the program eligibility limit. On further appeal, Defendant Anne Murphy, Secretary of FSSA, issued a notice summarily affirming the ALJ's decision.[1]

The Novaks filed this lawsuit in the Superior Court of Marion County, seeking judicial review of the final determination and also seeking damages against IBM, FSSA and Anne Murphy, in her official capacity. The Defendants removed the case to this court because it has original jurisdiction over a claim for damages brought pursuant to 42 U.S.C. § 1983, which statute provides a remedy against persons acting under color of law who violate another person's "rights, privileges or immunities secured by the Constitution

---

[1] Based on representations made by the Plaintiffs in their brief, Mr. Novak has subsequently been found eligible for Medicaid benefits, but Plaintiffs' continue to pursue this lawsuit, including the appeal of that initial determination, because they were required to deplete a large amount of their resources before Novak's eligibility was recognized and, consequently, allege economic damages.

and laws" of the United States. In addition to the Section 1983 claim which Plaintiffs bring against all Defendants, they assert a common law negligence claim against IBM. Plaintiffs maintain that even if it is ultimately determined that the ALJ's decision was correct and Mr. Novak was not eligible for Medicaid at the time the application was submitted on his behalf, the couple were damaged by the IBM coalition's negligent handling of the application and the appeal, insofar as they were unable to take corrective action quickly in order that Mr. Novak could qualify for benefits sooner. Injunctive relief requiring FSSA to correct the alleged processing problems is also sought by the Plaintiffs.

## DISCUSSION

**Rule 12(b)(1)**

Pursuant to Fed.R.Civ.P. 12(b)(1), a party may file a motion to dismiss challenging subject matter jurisdiction, including the Plaintiffs' standing. *See Pollack v. U.S. Dept. Of Justice*, 577 F.3d 736 (7th Cir. 2009). A challenge to a party's standing to bring a claim under a federal statute affects the subject matter jurisdiction of the court and should therefore be addressed prior to a merits based challenge. See *Johnson v. Wattenbarger*, 361 F.3d 991, 993 (7th Cir. 2004). Accordingly, the court will first address the Rule 12(b)(1) challenge to Plaintiffs' standing and the court's subject matter jurisdiction. Such an examination is difficult, as the state government Defendants have mixed their lack of standing argument with the arguments they make regarding Plaintiffs' failure to state a

claim.

In their motion, the state government Defendants point out that Paragraph 42 (iv) of Plaintiffs' complaint seeks to invoke the rights of third parties and that the Novaks lack standing to assert such claims. Paragraph 42 (iv) of the complaint is premised on the requirements of 42 C.F.R. § 435.930 and asserts that the FSSA must assure that "Medicaid is furnished promptly to eligible individuals." In their brief, the Defendants correctly note that up to this point in time neither Mr. Novak nor his wife have been determined eligible for Medicaid benefits. This factual defect affects the Novaks' standing as opposed to whether or not their claim for relief is adequately stated. A party can adequately state a claim and still not be a member of the group of people entitled to assert it and, hence, have no standing. *See Hope v. County of DuPage, Ill.,* 738 F.2d 797 (7th Cir. 1984). Accordingly, the court will examine the issue of standing before determining if Plaintiffs' Section 1983 claims are adequate to survive Rule 12(b)(6) scrutiny.

The requirements of Article III standing are: (1) an injury in fact - the concrete and particularized actual or imminent invasion of a legally protected interest; (2) a causal connection between the injury and the conduct complained of; and, (3) the likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In the case at bar, the legally protected interests at issue with regard to paragraph 42 (iv) of Plaintiffs' complaint are those of individuals qualified to

receive Medicaid benefits.  While Mr. Novak has apparently been found Medicaid eligible based upon a subsequent application, the allegations of this lawsuit have nothing to do with that later decision or the provision of benefits subsequent to that decision. The complaint in this lawsuit seeks a remedy for the problems Plaintiffs' allege they encountered in connection with Mr. Novak's initial application and the denial of eligibility that resulted from that application.  Accordingly, this court may not entertain any of Plaintiffs' claims which are premised on a right to the prompt provision of Medicaid benefits at a time when neither Plaintiff had been determined eligible, as appears to be alleged in paragraph 42 (iv) of their Complaint.

Nevertheless, Plaintiffs have asserted claims on the basis of the state's failure to abide by other provisions of the Medicaid Act and its implementing regulations, which provisions affect the actual application review process, such as the requirement in 42 C.F.R. § 435.911(a)(2) that eligibility be determined within 45 days, that the information provided by the applicant be utilized in making the determination as required by 42 C.F.R. § 435.953 and the mandate of 42 U.S.C. § 1396r-5(e) that applicants and community spouses be provided notice of the method utilized to compute the community spouse resource allowance.   Standing exists on the basis of Mr. Novak's application alone for claims which Plaintiffs  assert on the basis of the requirements dictated by federal law for the application process.   Whether such claims survive a Rule 12(b)(6) motion is a different question.

**Rule 12(b)(6)**

State Government Defendants' Motion

The state government Defendants contend that the statutes and regulations relied upon by the Novaks in asserting their Section 1983 claim do not create any enforceable rights. Section 1983 does not itself protect anyone against anything; rather, there must be an underlying unambiguously conferred right which supports any claim brought under Section 1983. *Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002). Plaintiffs, of course, disagree and offer some convincing authority to the contrary. However, the state government Defendants also put at issue the Plaintiffs' entitlement to compensatory damages from either FSSA or Anne Murphy, in her official capacity, and whether Plaintiffs' request for injunctive relief is moot. To that end, as will be discussed, the court's resolution of those issues leaves the Plaintiffs without a Section 1983 claim against both FSSA and Secretary Murphy, rendering the lack of "enforceable rights" argument moot.

First, it should be noted that neither states nor their agencies are "persons" subject to suit under 42 U.S.C. § 1983 and that an action against a state official acting in his or her official capacity is considered to be an action against the state and thus barred as well, unless the relief being sought from the official is prospective in nature. *Will v. Michigan Dept. of State Police,* 491 U.S. 58 (1989); *Lett v. Magnant*, 965 F.2d 251, 255 (7th Cir.

1992); *Rittenhouse v. Board of Trustees of Southern Illinois University,* 628 F.Supp.2d 887, 893 (S.D.Ill. 2008).  Accordingly, Plaintiffs have no claim under Section 1983 against FSSA and the only viable claim which they can make under that statute against Defendant Anne Murphy, as Secretary of FSSA, is one for prospective/injunctive relief.

Entitlement to Injunctive Relief

The state government Defendants argue that Plaintiffs' request for injunctive relief is mooted by the change in circumstances, specifically IBM's removal from the process of application review and Mr. Novak subsequently being found eligible for Medicaid benefits.  Since Mr. Novak is now receiving Medicaid, the only prospective relief being sought by the Plaintiffs is the injunctive relief they seek to require Secretary Murphy and her agency to implement a less problematic system of processing applications.  Because this is not a class action, such a change in circumstances requires a plaintiff to show more than a theoretical possibility that the same alleged wrong might occur again to him in order for injunctive relief to be warranted.  *Walsh v. U.S. Dept. Of Veterans Affairs,* 400 F.3d 535, 537 (7th Cir. 2005); *In re Associated Press*, 162 F.3d 503, 511 (7th Cir. 1998).

Plaintiffs argue, unconvincingly, that the removal of IBM does not establish that the policies and procedures, which caused Mr. Novak's application to be lost and delayed in processing, have changed and that Mr. Novak will be facing similar jeopardy each year in the future as his circumstances are evaluated for redetermination and renewal of his

11

benefits. The court disagrees. Clearly, the removal of IBM from the process does address the bulk of the complaints registered in this lawsuit by Plaintiffs, and while there is no guarantee that a cure has been found for all of the problems which may have resulted from the modernization effort, in the future Mr. Novak will not be facing the same inequities he alleges existed with IBM at the helm of the review process. Furthermore, the periodic review for redetermination is guided by a separate federal regulation. 42 C.F.R. § 435.916. Accordingly, Plaintiffs may not obtain injunctive relief under Section 1983 and, consequently, their claims under that statute are dismissed as to the FSSA and Anne Murphy, as its Secretary.[2]

IBM's Motion

**Section 1983**

"When a plaintiff brings a § 1983 claim against a defendant who is not a government official or employee, the plaintiff must show that the private entity acted under color of law." *Rodriguez v. Plymouth Ambulance Services,* 577 F.3d 816, 822 (7th Cir. 2009). IBM argues that the Novaks cannot bring a claim against it under 42 U.S.C. § 1983 because it is a private party and never acted under color of law. The Novaks claim that IBM was a state actor because it exercised powers that are traditionally reserved to

---

[2]FSSA and Anne Murphy remain Defendants in this matter only for purposes of the Novaks' appeal of the agency's initial Medicaid eligibility determination.

the State. The State's delegation of its traditional obligations to a private entity includes the delegation of constitutional responsibilities. *Id*. at 826. IBM counters that the ultimate decision whether or not to award benefits to an applicant remained at all times with the State.

The Novaks' complaint is not limited to the eligibility decision; rather, they focus as well on the problems which occurred throughout the entirety of the application process leading up to that decision and even part of the appeal process. Furthermore, the contract between IBM and the FSSA clearly provides a degree of discretion to IBM in the performance of the work required by the contract and if, as alleged by the Novaks, employees of IBM represented themselves as FSSA representatives and the State relied wholly upon the IBM coalition's work-up of the application to make its Medicaid eligibility determination, then the notion that the State was at all times making the "final call" is illusory, and IBM was indeed performing functions which have been traditionally unique to the State.

In *West v. Atkins*, 487 U.S. 42, 54-55 (1988), the Supreme Court recognized that the provision of medical services to those who are incarcerated is a traditional function of the State. In analyzing an inmate's claim against a physician under contract with the State, the high Court reasoned that if an individual's function while working under contract with the State is to perform activities which are vested with state authority, then that person is acting "under color of law" regardless of the terms of his employment as set

forth in the written contract. *Id.* at 56-57. This court is of the opinion that providing medical care to those who are indigent is also a traditional function of state government. *See Goldberg v. Kelly,* 397 U.S. 254, 261-62 (1970). Accepting the Novaks' allegations as true, the State entrusted to IBM its obligation to accept, promptly review and process a Medicaid application in accordance with the federal Medicaid statutes and regulations. Accordingly, consistent with *West*, IBM acted under color of state law for purposes of Section 1983 and may be held liable if its employees or agents violated the Novaks' federally conferred rights.[3]

**Negligence**

IBM maintains that, as a private party, it owed no duty to the Novaks' upon which a negligence claim can be based. It argues that the Novaks were neither a party to, nor a third-party beneficiary of, the contract which it had with FSSA and, therefore, should not be allowed to claim that IBM assumed a duty toward them. Finally, IBM asserts the economic loss doctrine as a bar against the recovery of damages by the Plaintiffs through a tort claim.

Pursuant to Indiana law, the existence of a common law duty based on a party's relationship to another is a question of law for the court. However, a party can take

---

[3]This determination is consistent as well with the conclusion reached by Judge McKinney of this court in ruling on a similar motion to dismiss brought in *Gibson v. International Business Machines Corp.*, currently pending as 1:10-cv-0330-LJM-TAB (*see* Docket # 29 in *Gibson*).

action which results in its assumption of a duty of reasonable care which it otherwise would not have held, and whether such an assumption of duty has occurred is most often a question of fact. *Vertucci v. NHP Managment Co.*, 701 N.E.2d 604, 607 (Ind. App. 1998). Regardless of whether the Novaks were intended third-party beneficiaries of the contract between IBM and FSSA, a duty in tort could have been assumed by IBM when it took on the responsibility the State owed to the Novaks with respect to the processing of a Medicaid application. *Edwards v. Honeywell, Inc.*, 960 F.2d 673, 675 (7th Cir. 1992).

Plaintiffs' Complaint contains allegations sufficient to support a claim that IBM assumed a duty toward them in tort and that it breached that duty. As IBM notes, foreseeability of harm is a part of the analysis in determining whether there has been an assumption of duty. *See Sparks v. White*, 899 N.E.2d 21, 24 (Ind. App. 2008). However, at this point in the lawsuit, the court is not in the business of weighing the evidence, which is exactly what would be required for it to find that IBM could not have foreseen that its assumption of FSSA's responsibility and subsequent failure to perform as promised could lead to an adversely affected applicant suffering injury. Furthermore, the requirement of foreseeability for purposes of the duty analysis is much less demanding than foreseeability for purposes of proximate cause. *Cox v. Staughton Trailers, Inc.*, 837 N.E.2d 1075, 1080 (Ind. App. 2005).

IBM's final arrow fired at Plaintiffs' assumption of duty allegations is its argument that public policy issues preclude a finding that it assumed a duty toward the Plaintiffs.

However, in making its argument, IBM simply reverts back to its assertion that because the contract with FSSA states that no one shall be deemed a third party beneficiary, it would be against public policy to allow someone to benefit as though they were a third party beneficiary. That argument is simply unconvincing where, as this court has already noted, the FSSA assumed an obligation to the Plaintiffs when it agreed to participate in the federal Medicaid program and then transferred a large part of that obligation to IBM through the contract. If a party could rid itself and its contractor of such assumed duties or obligations to others by way of adding a "no third party beneficiary" provision to any written agreement between them, there would be little sense in recognizing the existence of those assumed duties or obligations to begin with.

Finally, there is IBM's argument that pursuant to the economic loss doctrine, breach of contract is the only theory under which a plaintiff can recover for the failure of a product or service to perform as expected. Citing *Indianapolis-Marion County Public Library v. Charlier Clark & Linard, P.C.,* 929 N.E.2d 722 (Ind. 2010), IBM argues that the Indiana Supreme Court has made it clear that under Indiana law the economic loss doctrine applies in tort cases where a service is at issue as well as to its traditional application in product liability cases. Unfortunately for IBM, that is a misinterpretation of *Charlier* and the economic loss doctrine.

In *Charlier,* the plaintiff library was attempting to collect for damages to a structure from the subcontractor which had been hired to build the structure. *Id*. at 725-

16

726. In short, the economic loss doctrine has no application to a circumstance where the Plaintiff has not purchased a service or product from the Defendant and is not seeking damages for which the allocation of risk has been predetermined in some fashion by the parties involved. *See KB Homes Indiana, Inc., v. Rockville TBD Corp.*, 928 N.E.2d 297. 304 (Ind. App. 2010). Accordingly, there is no basis to dismiss Plaintiffs' negligence claim because economic damages are being sought.

## CONCLUSION

For the reasons stated in this entry, the state government defendants' Motion to Dismiss (Docket # 13) is **GRANTED**. Plaintiffs' Section 1983 claims brought against FSSA and Anne Murphy, in her official capacity, are dismissed because no compensatory damages may be pursued against either and the requested prospective/injunctive relief is mooted by the change in circumstances. These two state government Defendants remain in the case for purposes of defending Plaintiffs' appeal of the initial FSSA decision denying Mr. Novak Medicaid eligibility.

IBM's Motion to Dismiss (Docket # 15) is **DENIED** in all respects.

SO ORDERED this 30th day of March 2011.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Aaron D. Charfoos
KIRKLAND & ELLIS LLP
aaron.charfoos@kirkland.com

David S. Christoff
INDIANA OFFICE OF THE ATTORNEY GENERAL
david.christoff@atg.in.gov

Adam Clay
INDIANA ATTORNEY GENERAL
Adam.Clay@atg.in.gov

Anna May Howard
SEVERNS & STINSON LAW FIRM
amh@severns.com

Andrew W. Hull
HOOVER HULL LLP
awhull@hooverhull.com

Laurie E. Martin
HOOVER HULL LLP
lmartin@hooverhull.com

Steven D. McCormick
KIRLAND & ELLIS LLP
smccormick@kirkland.com

Scott Richard Severns
SEVERNS & ASSOCIATES
sseverns@severns.com